## BOYKIN v. BLACK.

No. 1982.

Court of Civil Appeals of Texas. Beaumont.

July 24, 1930.

Rehearing Denied Oct. 8, 1930.

Crook, Lefler, Cunningham & Murphy, of Beaumont, for appellant.

A. D. Lipscomb, of Beaumont, for appellee.

WALKER, J.

The original map or plat of the city of Beaumont has been lost and no duly authenticated or proven copy is in existence. In 1891 and 1892, under instructions from the city authorities, Mr. L. J. Kopke made a new map establishing boundaries for the streets and corners for the blocks. The following excerpt from his testimony in this case shows how he did this work and the data upon which it was based:

"The oldest map I ever found of the old townsite of Beaumont was one in the possession of Mr. Tom J. Russell, and I used that in making a resurvey of the old town plat in 1891 for the City of Beaumont. I made that plat in 1891. I don't remember whether the plat had any figures on it or not. You could scale the blocks and streets and tell that the streets west of Main, well, in fact, all streets were intended to be 60 feet, and the blocks west of main 300 x 300, and the blocks east of Main 240 x 300. After making a careful preliminary survey, I discovered that there was an excess both east and west and north and south of about one foot and $11/100$ to each block. The City Council was at a loss to know what to do with that excess, so they called in Captain O'Brien, and I think they talked the matter for about a week. His advice finally was if the property owners got all they were entitled to inside of the block, that the city was entitled to that excess of 1.11 foot, and so I went ahead and staked out the entire old plat and put monuments at the intersection of the streets, stone monuments with concrete holes for the centers, and at the corner of each block I put three-quarter iron bolts all over the old town plat. Now when I made the survey for Mr. Black, all those monuments were gone, but I found one of my old bolts down here on Park and Wall and one up here on Park and Bowie, those two old stakes I used in making the survey for Mr. Black. When I made this survey of 1891, I couldn't find any old monuments at corners of the blocks. There were no plats of the City of Beaumont except some old lithographs that were not reliable. That is why I hunted up this map Mr. Russell had. In addition to that, I wanted to get the evidence of some old citizen here to put some of the block corners. Well, Mr. James Ingalls had

been county surveyor here for thirty years, and I got him to go out with me one day, and we run around in a buggy. I got permission to corner over here across the street, what was then the old Higgins shop, old man Higgins, father of Pattillo Higgins lived there then, that was the only place Mr. Ingalls could point out, any definite block corner. He gave me some information as to outside lines, but as to block corners he gave me none outside of that. I could form an approximate idea about where the centers of the streets were located. Based on that, I gave the blocks 300 feet and the streets the width of 61.11 feet. That would make it 61.11 feet in excess, over that—they was supposed to be 60, so I had to add 1.11 feet, making it 61.11. I know where the Feinberg Building is on that lot of Wilson and Tyrrell's where the dry goods store is now. I don't know how far that extends over into Fannin Street. I made no examination of Boykin's building other than to ascertain the location of the back wall of the Boykin Building. That is as far as I went in my investigation. I found a stake at the back end of Boykin's lot. There was one against the wall, I think, but there was some stakes at the other corner of that lot, fronting on Orleans. I did not determine whether Boykin's front wall was on the street line or not. My investigation did not go any further than Mr. Boykin's rear wall. I made a plat of it for Black. I don't know how much, if anything, that Feinberg Building is in Fannin Street. I had nothing further than a plat made up of that block."

In 1911, 1912, and 1913, Mr. C. L. Scherer, a civil engineer in the employment of the city of Beaumont, made a new map of the city. The following excerpts from his testimony in this case show the data upon which his work was based:

"I live in Beaumont; am a civil engineer. I was at one time connected with the City of Beaumont as a surveyor or civil engineer, from April, 1905, to December, 1919. At that time I was called upon to make a survey or map of the entire City of Beaumont. That included the old town of Beaumont. I made the map in 1911, 1912 and 1913; I directed the making of the survey at that time. I had two or three different parties on the work. I directed the survey. From that survey I made up a map I spoke of, of the City of Beaumont, including the old town of Beaumont. In that I included Block 50 of the old town. The map that I made of the old town of Beaumont, that is including the old town, show all the lots were 60 x 120 feet, except key lots, which were 60 x 150. All those surveys that were made upon which the map I speak of was based, were made under my direction.

"I am familiar with the history of the original map of the old town of Beaumont. Mr. V. Wiess had what he claimed—it wasn't V. Wiess—I had a map furnished me that the city had that they had got from Mr. Russell and also one that was made for the city under contract with Mr. Kopke in 1892, I think. As City engineer, I was custodian of the map which Mr. Kopke made, but the secretary had the Russell map, I think in the vault. Based upon the information I got from those maps and the department, engineering department of the City, I made this map that I described a while back.

"The Russell map did not have the dimensions. The Kopke map did. I do not know how Kopke, in 1892, got the dimensions that he gave. I never have seen any old maps that gave any dimensions of the lots of the old townsite of the City of Beaumont.

The dimensions upon the old Kopke map and the dimensions I made upon my map of the City of Beaumont, and especially upon the old town of Beaumont, have been accepted by everyone as being the correct description of the lots mentioned therein. I am familiar with the attitude of all attorneys, or attorneys generally, and abstract companies in making abstracts, and people passing upon the title to lots in Beaumont with reference to dimensions in the old town. I have never heard any attorneys, including Judge Lipscomb, question the size of the lots in the old town of Beaumont. * * *

"If the Feinberg Building is four or five inches out into Fannin Street, then all my testimony as to Boykin's building being over the line would be incorrect.

"I surveyed the whole city in 1911, 1912 and 1913, took three years, about. I don't remember just what particular part of the surveying I did. I was on it at different times all through. There was a great deal of the city that had never been previously surveyed, some additions that had been added on. The city was about five square miles at that time, I believe. I don't know what the site of the old city was. I never did figure that out. The old city of Beaumont wasn't far from a square mile, I imagine. It was probably a mile long. I couldn't state whether it was about a quarter of a mile through from east to west. I never figured that. It run from Austin Street to Magazine Street. I don't know how many blocks that is. Austin Street is this street right down here by the river, to Magazine Street, that is north of Millard School. That is not far from half a mile. It is more than half a mile. It won't go over a square mile, probably less. I couldn't state exactly what it is. That had been surveyed by Kopke in 1892 and 1891, and I took Kopke's surveying on that, adhered to that. Kopke gave the streets a width of 61.11 feet. I did not necessarily adopt that width because he did, because that is what they were. They were 61.11 feet. You take the original

plat calls for the width of them, I don't remember how many varas right now, but it figured out in feet 61.11 feet. I saw the plat that they had, the old original plat as I remember seeing it, had the streets marked on it. I saw it along about that time. It was in the City Hall. I don't know whether it was the old original map or not, but I saw an old map had a legend to it, stated the reason why these streets were 61.11 feet. I can't recall now where it was, but that is in my mind. I don't know what map that was. It could possibly have been a copy. It was a copy, purported to be a copy of the original. I don't know if it was the original. I am confused. That was a long time back. The Russell map did not have any field notes of the size of lots and blocks, but I wont be positive whether it had street widths or not. I couldn't answer whether Kopke gave these streets 61.11 so that he could give the blocks 300 feet. I don't know. The old townsite was laid off about 1837 or 1838, somewhere in there."

Block 50 is a part of the old town of Beaumont. It is bounded on the northwest by Fannin street, on the northeast by Orleans, on the southeast by Forsythe, and the southwest by Park street. Fronting Fannin street in block 50, numbering from its southwest corner, are lots 322, 323, 324, 325, and 326, each with a frontage of 60 feet on Fannin street and each running back 120 feet parallel with Orleans street and Park street. Fronting Forsythe street in this block, numbering from its northeast corner, are lots 317, 318, 319, 320, and 321, each with a frontage of 60 feet on this street and each running back 120 feet parallel with Orleans street and Fannin street. Between the lots facing Fannin street and those facing Forsythe street, running across the center of the block from Orleans street to Park street, are lots 327, fronting 60 feet on Park street and extending back 150 feet, and lot 328, fronting 60 feet on Orleans street and extending back 150 feet, touching lot 327. From the description thus given it appears that block 50 is a square, 300 feet by 300 feet, divided into twelve lots of the size and numbered as indicated. It also appears that lot 328 is bounded on its northwest side, numbering from the northwest corner of the block, by lots 326, 325, and 30 feet off the northeast side of 324. In 1922 appellant owned lots 323 and 324 and appellee owned lot 328. Desiring to improve his lots by building thereon a brick building 120 feet by 60 feet to cover all his property, he called upon the city to locate the corners and boundaries of his lots. He made this request of the city because at that time there was a rumor current to the effect that the brick building on lots 325 and 326, known as the Feinberg Building, encroached 4½ inches upon Fannin street. In 1922 he built his brick building upon the corners and lines established for him by the engineering department of the city of

Beaumont. In 1926 or 1927 appellee, who owned lot 328, before and at the time appellant improved his lots, complained to him that his brick building encroached a few inches on lot 328 where these lots adjoin. Not being able to adjust this dispute, appellee brought suit in trespass to try title for the disputed strip. Appellant disclaimed except as to the land occupied by his building, and as to this pleaded the usual defenses and the several statutes of limitations with improvements in good faith. Upon trial to the court without a jury, all issues of title were resolved in appellee's favor and judgment entered in his favor decreeing that appellant's brick building encroached 4½ inches on lot 328. The court also found in favor of appellant on his plea of improvements in good faith, and judgment was entered accordingly. Complaint here is made only on the finding on the issue of title.

Appellant's principal assignment is that appellee failed to discharge the burden of proof, imposed by law upon him as plaintiff, to establish by a preponderance of the testimony that appellant had encroached upon lot 328 with his brick building. On this issue appellee's only witness was Mr. C. L. Scherer, named above, who thus described the work done by him in locating the boundary line between lots 328 and 324:

"I have personally surveyed the lot 328 in block 50 and lots 323 and 324 in block 50 of the old town of Beaumont. In surveying that I used as my basis the official map of the City of Beaumont. I made this map from my actual survey of these lots, 328, 324 and 323 in Block 50 of the town of Beaumont. Lot 328 faces Orleans Street. That is a key lot. The dimensions of lot 328 are 60 feet on Orleans and 150 feet deep. Lots 324 and 323 face Fannin Street. They face northwest. The back portion of 328 touches lot 324. I haven't got it marked in here, but lot 328 projects along the south line of lot 324 about 25 feet, between 60 and 75 feet, I should judge, from this scale. One inch is 50 feet. Then lot 328 projects along 324 30 feet. I found a building on lots 323 and 324. The southeast wall of that building on lot 324 is the one touches lot 328. I found the wall overlapped lot 328 four and one-eighth inches. The foundation is 15 inches, or rather 11⅛ inches beyond the wall, the footing of the foundation. The wall projects over four and one-eighth inches. The building on lots 324 and 323 is Burge's garage. That building is not flush with the property line on Fannin Street. It lacks about four and one-eighth inches reach the property line.

"On the corner of Orleans and Fannin Street, there is a brick building. The brick building on that corner coincides practically with the true boundary line on both Orleans and Fannin Streets. It projects four and one-eighth inches further north than the Burge

garage. That is known as the Wilson Building. The south wall of that Wilson building is on the line of lot 328 and also of the lot it is constructed on. That is the building Tyrrell Hardware Company was on. The south wall of that Wilson building on the north line of 328 is four and one-eighth inches further to the northwest than the Burge Garage, located on lot 324.

"I am familiar with the monuments that were erected by Kopke back there at the date I made that survey. In this survey, I based them on the monuments I put in myself, I had put in. I started the survey, run the first line, and turned the right angle for the parties to begin on. I made this survey on that. That was tied to a Kopke monument, Main Street. Main Street was the original base line. Those measurements that I gave, are set forth in pencil and pen marks."

Appellant offered as one of his witnesses Mr. A. L. Tetley, who testified he had been connected with the city engineering department for about five years; that he located block 50 and took as his beginning point an old iron pin at the corner of Bowie street and Park street and another at the corner of Wall street and Park street. In doing this work he accepted these as Kopke monuments, that is, as monuments located by Kopke in surveying the city in 1891 and 1892, and he also accepted as official the map made by Kopke at that time. He testified further as follows:

"I located the buildings in the block and monuments, the city monuments that were close to the block, in addition to those two pins I told you of. I couldn't say who put those old monuments there. I haven't any knowledge of how the old monuments were put there or who put them in, rather. I will have to have that map to tell you how much I found the Feinberg Building out in Fannin Street. (Witness is handed map.) The Feinberg Building extends five inches into Fannin Street on the side nearest Park and 4¼ inches into Fannin Street on the corner nearest Orleans. In between it is 5⅜ inches into Fannin Street, assuming the old Kopke corner at Bowie as being correct, at Wall Street as being correct. I am acquainted with city monuments as recognized by the city engineering department in the vicinity of Block 50 of the old townsite and for two or three blocks each way therefrom. In locating Block 50, I located those monuments, but the figures on this other map are taken from the Kopke pin at Wall and Park. That is generally believed to be the Kopke pin at Wall and Park. I don't know if he put it there. I have seen it. I don't know either the dimensions of these lots as they were in 1838 and 1839. The corner I took my start from is the corner I found there, and everybody in the engineering department said it was a three-quarter inch pin, I believe, it

would be an old Kopke corner. There was, in fact, an iron pin at the corner. I found another iron pin at Park and Bowie. I took them as a basis for my surveying. I came in to Block 50, taking the line of Block 50 from the iron pin, at the corner of Bowie and Park Wall and Park, and the measurement from Wall and Park. Boykin's building is not in Fannin Street on the side nearest Park. It is an inch and one-eighth in on the property, and on the other side nearest Orleans it is a half inch into Fannin Street. I know where that iron pipe is at the corner of Park and Fannin Streets. The iron pin is an inch and a half in off Park Street line and an inch and three-eighths in off Fannin Street line. That is according to my measurement. If that iron stake is the corner of that block, then Boykin's line would be in the street further at both places. I don't know how long that iron pipe has been there at that corner. My reason for disregarding it in making this survey was it was not an original corner. I guess the ones made by Kopke were not original corners in 1835, but they are the only thing we have to go by now, I guess, outside of city monuments. Boykin's east wall nearest Orleans street is 120 feet and half an inch long. It is exactly 120 feet and half an inch. I found the southeast corner of Boykin's building two and three-fourths inches over on the lot 325, and right on the exact line of division between 328 and 324. It was exactly on the line at the corner of the building proper, the wall. On the Orleans side the Feinberg building is four inches in on 326—I don't seem to have it marked here for 325. It is one inch out in Orleans. I accorded a width of 61.11 to the streets—that is 11/100 of a foot exactly, 22 varas—exactly 22 varas."

Mr. Kopke, who made the "official map" of the city, was employed by appellee to survey appellant's property, but, as appellee did not introduce him as his witness, appellant offered him as a witness. Mr. Kopke testified as follows as to the work done by him in locating the disputed line:

"I made a survey to locate the south wall of Boykin's building at the request of the plaintiff, Mr. Black. As I described yesterday, in 1901 I had—I mean in 1891—I put iron bolts, iron bars, at the corner of each block, in addition to the monuments that I put at the intersection of streets. In starting this survey I hunted up and found two of these stakes at the corners of blocks, one at Park and Wall and one at Park and Bowie. From these two I made the survey for Mr. Black. I did not attempt to hunt up any monument, because I knew they were all lost or destroyed, and I wanted to start from something that was my own work. I found that the south line of Boykin's wall, according to my survey, projected over, about a half inch over the line as I located it at

that time. I marked it as I knew it at that time, one-half inch, on the maps here. That is my notation. That was at both corners. It was the southwest corner and the southeast corner. I found it over half an inch .at both places. That was the extent of the surveying.

"* * * I have been an engineer for forty-eight years. I know something about the effect of temperature on tapes that you use for measurement. I know that in theory our steel tapes are supposed to be standard length, I think at 62 degrees, and for temperature less than that the chain would be shorter than standard, and when the temperature is higher than that, the chain would be longer than standard, so much per degree. In large cities they attempt to compensate for differences in temperature. They will measure on the ground, note the temperature, and when they get back to the offices they will make corrections to correspond to those changes in temperature. I did not make allowances for temperature .in my surveying. In view of that fact, I could attach very little importance to a variance of half an inch, especially where you had to chain two or three blocks to reach the point you wanted to survey. The chain might vary as much as one-sixteenth or one-eighth of an inch every hundred feet.

"* * * One of the markers that I used in making the survey was at the intersection of Park and Wall and one at the intersection of Park and Bowie, both on the north side of the street. They were not out in the street. They were three-quarter inch iron bars, I think, 15 inches long, as near as I remember. They were not the monuments I set up in the street when I made the map. The monuments were at the intersection of the center line of the street. These stakes were at the corners of the blocks. They were driven in the ground. At the time I put them in they were about level with the ground, but now you have to dig them anywhere from six inches to twelve inches, on account of having been filled in, more or less. When they were filled in, it is possible they could have been removed. They are corners of property lines, corners of blocks. It is possible when someone put in a corner post of some sort of construction they might have received a blow some way or other and been slightly moved. I don't believe I would consider them as accurate as my monuments put in the middle of the streets."

■ On the record before us the map made by Kopke in 1891 and the monuments established by him at that time constitute the best evidence of the proper location of the blocks and the boundaries of the streets as established by the original survey in 1837 or 1838. All the work done by Mr. Scherer in resurveying the old town and the new subdivisions in 1911, 1912, and 1913 was based on the Kopke map. In surveying block 50 for appellee herein, the result attained by him rested entirely upon the work done by Mr. Kopke in 1891. Speaking of his work he said it was "tied to a Kopke monument, Main Street. Main Street was the original base line." In locating the boundary line in dispute Mr. Tetley and Mr. Kopke also rested their work upon monuments established by Mr. Kopke in 1891, these monuments being at Bowie and Park and Wall and Park. Beginning at these two monuments, Mr. Kopke and Mr. Tetley reached practically the same result, there being only half an inch between their respective locations, and Mr. Kopke said of this difference that it was of no consequence. The location of the monuments at Park and Bowie and Main and Bowie were shown beyond controversy and were well recognized monuments in the city of Beaumont. Having reached the same conclusion by surveys made at different times, it should be said, as a matter of law, that the measurements made by Mr. Tetley and Mr. Kopke were correct. In deference to the judgment of the trial court, it should also be said that the measurements made by Mr. Scherer from Main street as his base line were correct. Then the conclusion follows that either Main street is not properly located or the monuments at Park and Bowie and Main and Bowie are not properly located. In other words, there is an error of 4½ inches between Main street, as one monument, and the monuments at Park and Bowie and Main and Bowie. As plaintiff, the burden rested upon appellee to raise the issue of accuracy in favor of the Main street location. On this issue there is not a scintilla of evidence in the record. It is not a question of judging the credibility of the witnesses nor of giving the proper weight to their testimony. On these issues this court is foreclosed by the judgment of the lower court. Appellee's case falls for the simple reason that he offered no testimony to support his vital issue, that is, the correctness of the base line assumed by him as against the monuments recognized by appellant's surveyors.

■ From what has been said it follows that the judgment of the lower court must be reversed. Appellant asks us to render judgment in his favor upon this reversal on three grounds: First, under the facts of the case as herein detailed, he insists as a matter of law that he should have judgment. This contention is denied. It is not clear to us that on another trial appellee cannot discharge the burden imposed upon him by law of showing that the base line assumed by him was correctly located. Second, appellant contends further that appellee stood by and watched him erect his building upon the line located for him by the city engineering department, and not having objected at that time, that he is now estopped to question the correctness

of the location thus made. The simple answer to this proposition is that the record does not show that appellee knew that the building was being erected or had been erected until long after it had been completed. Third, appellant says again that title to the disputed strip was held by him by limitation. He and those under whom he holds had held this disputed strip under fence for more than forty years. He offered abundant testimony that this claim was hostile and that he and his privies claimed this land and that the claim was under the Statute of Ten Years' Limitation (Rev. St. 1925, art. 5510). However, he did not rest his case upon this testimony, but offered testimony showing that the original entry of those under whom he holds was peaceable and that there was no adverse claim under the statutes of limitation to the land in controversy. There was no testimony that the peaceable entry, as originally made, was ever repudiated and notice given to the subsequent holders of lot 328 that the holding of this disputed strip was adverse to their title. Under this testimony thus offered by appellant it cannot be said, as a matter of law, that he established his limitation title.

It follows that the judgment of the lower court must be reversed and the cause remanded for a new trial, and it is accordingly so ordered.